**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PROXICOM WIRELESS, LLC,

          Plaintiff,

    v.

TARGET CORPORATION,

          Defendant.

C.A. No. 6:19-cv-1886-RBD-LRH

**JURY TRIAL DEMANDED**

**DEFENDANT TARGET CORPORATION'S**
**PARTIAL MOTION TO DISMISS AND**
**SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 3

    A.    The Asserted Patents Describe a Generic System for Communicating
         Information Wirelessly Using a Server as a Broker Between Wireless
         Devices.................................................................................................... 3

    B.    The Asserted Claims of the '359, '749, and '592 Patents ...................... 4

III.   LEGAL STANDARD.......................................................................................... 6

    A.    Section 101 Defines Patentable Inventions............................................. 6

    B.    *Iqbal/Twombly* Pleading Standards for Allegations of Patent Infringement .......... 8

IV.   COUNTS I-III SHOULD BE DISMISSED BECAUSE THE ASSERTED
     CLAIMS ARE INELIGIBLE UNDER 35 U.S.C. § 101.................................... 9

    A.    *Alice* Step One: The Count I-III Claims Are Directed to an Abstract Idea .......... 10

         1.    The Asserted Claims of the '359, '749, and '592 Patents Are
             Directed to the Abstract Idea of Using a Server to Facilitate the
             Exchange of Information Between Wireless Devices ............................. 10

         2.    The Use of a Server to Facilitate the Exchange of Information
             Between Wireless Devices Is Abstract .................................................... 12

    B.    *Alice* Step Two: Using Generic Wireless Devices on Generic Wireless
         Networks Does Not Add an Inventive Concept.................................... 16

    C.    No Further Claim Construction Is Necessary to Decide Patent Eligibility .......... 18

    D.    There Are No Issues of Fact That Preclude Summary Judgment........................ 19

    E.    The Remaining Unasserted Claims from the Count I-III Patents Are Also
         Abstract and Patent-Ineligible.............................................................. 20

V.    COUNTS VI-VIII SHOULD BE DISMISSED FOR FAILURE TO SATISFY
     *IQBAL/TWOMBLY* ......................................................................................... 22

    A.    Count VI Fails to Allege Infringement of Claim 1 of the '842 Patent ................. 22

    B.    Counts VII and VIII Fail to Allege Infringement of Claims 1 and 16 of the
         '129 Patent or Claims 1 and 15 of the '736 Patent ............................... 23

C.      All Claims Not Specifically Asserted Should Be Dismissed................................ 24

VI.    CONCLUSION................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software*, *Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)........................................................................ *passim*

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    890 F.3d 1354 (Fed. Cir. 2018)........................................................................ *passim*

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
    774 F.3d 979 (Fed. Cir. 2014)....................................................................................8

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)........................................................................ *passim*

*Affinity Labs of Texas, LLC v. Amazon.com*,
    838 F.3d 1266 (Fed. Cir. 2016)..................................................................................15

*Alice Corp Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................................................................ *passim*

*Ameranth, Inc. v. Domino's Pizza, LLC*
    No. 2019-1141, 2019 WL 5681315 (Fed. Cir. Nov. 1, 2019) ...........................................20, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................8

*Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*,
    No. 3:07-cv-30-RVEMT, 2007 WL 2020161 (N.D. Fla. July 9, 2007) ...................................1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................8

*Blackberry Ltd. v. BLU Prods., Inc.*,
    No. 16-23535-CIV, 2017 WL 5004845 (S.D. Fla. Mar. 27, 2017) .............................9, 24, 25

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 Fed. Appx. 882 (Fed. Cir. 2019)..........................................................................14

*BuySAFE v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)..................................................................................17

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019)..................................................................................14

*ChargePoint Inc. v. SemaConnect Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)..........................................................................10, 14

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   No. CV MJG-17-3717, 2018 WL 1471685 (D. Md. Mar. 23, 2018), *aff'd*, 920
   F.3d 759 (Fed. Cir. 2019)................................................................................10, 16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (2014)................................................................................................18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)................................................................................15

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)................................................................................13

*Elec. Power Grp. v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..........................................................6, 17, 20, 21

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)........................................................................15, 16

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016)................................................................................12

*Innovation Scis. LLC v. Amazon.com, Inc.*,
   778 F. App'x 859 (Fed. Cir. 2019) ..........................................................................20

*Intellectual Ventures I, LLC v. Capital One Bank (USA), N.A.*,
   792 F.3d 1363 (Fed. Cir. 2015)......................................................................7, 15, 21

*Intellectual Ventures I LLC. v. Erie Indemnity Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)................................................................................12

*Intellectual Ventures I LLC v. Symantec*,
   838 F.3d 1307 (Fed. Cir. 2016)................................................................................13

*Jacques v. First Liberty Ins. Corp.*,
   No. 8:16-CV-1240-T-23TBM, 2016 WL 3221082 (M.D. Fla. June 9, 2016)..........................1

*LendingTree, LLC v. Zillow, Inc.*,
   656 Fed. App'x 991 (Fed. Cir. July 25, 2016)......................................................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)......................................................................................................6

*OIP Techs. Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)..................................................................................7

*Proxicom Wireless, LLC v. Macy's, Inc.*,
    No. 6:18-cv-64-Orl-37GJK, 2019 WL 2209275 (M.D. Fla. Feb. 12, 2019) .................. *passim*

*Raptor, LLC v. Odebrecht Constr., Inc.*,
    No. 17-21509-CIV, 2017 WL 3503399 (S.D. Fla. June 22, 2017)............................................9

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)..............................................................................7

*SAP Am., Inc. v. Investpic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)............................................................17, 20, 21

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...............................................................................7

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)..............................................................................11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)............................................................................13

*Valentine Commc'ns, LLC v. Six Continents Hotels, Inc.*,
    389 F. Supp. 3d 1223 (N.D. Ga. 2019) .................................................................8

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018)..............................................................................7

*Werteks Closed Joint Stock Co. v. Vitacost.com. Inc.*,
    No. 16-CV-60695, 2016 WL 5076169 (S.D. Fla. Sept. 20, 2016) ................................9, 10, 25

*zIT Consulting GMBH v. BMC Software, Inc.*,
    No. 6-15-CV-1012-ORL-37KRS, 2016 WL 231215 (M.D. Fla. Jan. 15, 2016)....................18

## Statutes

35 U.S.C. § 101........................................................................................ *passim*

## Other Authorities

Fed. R. Civ. P. 1 .......................................................................................9

Fed. R. Civ. P. 8(a)(2) ................................................................................8

Fed. R. Civ. P. 12(a)(4) ..............................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................1, 7, 8, 19

M.D. Fla. L. R. 3.01(g) ............................................................................25

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1346 (3d ed.)..........................................................1

Defendant Target Corporation ("Target") hereby moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a claim as to Counts I-III and VI-VIII and as to all unspecified patent claims in all Counts.

## I.    INTRODUCTION

Plaintiff Proxicom Wireless, LLC ("Proxicom") asserted 12 claims across eight patents sharing substantially the same specification.[1] While the claims of all eight patents are directed to an abstract concept and Target does not infringe any of asserted claims, this motion addresses only two discrete issues. First, the asserted claims of the '359, '749, and '592 patents are invalid under 35 U.S.C. § 101. Because these claims have already been construed by the Court, claim construction cannot stand in the way of a § 101 determination at this stage. Second, Proxicom failed to satisfy the Supreme Court's *Iqbal/Twombly* pleading standards for its allegations concerning (a) the '842, '129 and '736 patents and (b) all unasserted claims of the Asserted Patents. Because Proxicom fails to state a claim as to at least these six patents and all unasserted claims, the Court should dismiss Counts I-III and VI-VIII (Doc. 1; "Compl.") as well as all unasserted claims in all Counts under Rule 12(b)(6).[2]

With respect to invalidity under § 101, this Court already construed the terms of

---

[1] The patents-in-suit are U.S. Patent Nos. 8,090,359 (Doc. 1-1) ("'359"), 8,116,749 (Doc. 1-2) ("'749"), 8,374,592 (Doc. 1-3) ("'592"), 8,385,896 (Doc. 1-4) ("'896"), 8,385,913 (Doc. 1-5) ("'913"), 8,369,842 (Doc. 1-6) ("'842"), 9,038,129 (Doc. 1-7) ("'129"), and 7,936,736 (Doc. 1-8) ("'736") (collectively, "Asserted Patents"). *See* Compl. (Doc. 1). "Asserted Claims" refers to '359 claim 1; '749 claim 1; '592 claim 19; '896 claims 1 and 40; '913 claims 1 and 7; '842 claim 1; '129 claims 1 and 16; and '736 claims 1 and 15. *Id.* ¶¶ 48, 61, 72, 85, 94, 101, 108, 118, 129, 136, 142, 149. The specifications of the eight Asserted Patents are substantially similar to one another, but differ in the specific functions claimed. Unless otherwise indicated, specification references herein are made to the '359 Patent.

[2] As this Court found in *Jacques v. First Liberty Ins. Corp.*, a partial motion to dismiss suspends the time to respond as to the entire complaint. *Jacques v. First Liberty Ins. Corp.*, No. 8:16-CV-1240-T-23TBM, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016); *see also* Fed. R. Civ. P. 12(a)(4); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1346 (3d ed.); *Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*, No. 3:07-cv-30-RVEMT, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007).

the '359, '749, and '592 patents in *Proxicom Wireless, LLC. v. Macy's, Inc.*, No. 6:18-cv-64-Orl-37GJK, 2019 WL 2209275 (M.D. Fla. Feb. 12, 2019) (hereinafter, "*Macy's*"). Under the Court's prior constructions, '359 claim 1, '749 claim 1, and '592 claim 19 ("Count I-III Claims") are each directed to the abstract idea of using a server to facilitate the exchange of information between wireless devices. As the patents' common specification concedes, the purported improvement over the prior art is simply "the use of a central server to 'broker' the transactions between peers." '359, 4:5-8; *see also id.* at 3:2-10. The Supreme Court and Federal Circuit have made clear that such claims are not eligible for patent protection. *See, e.g.*, *Alice Corp Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218-21 (2014) (invalidating claims directed to "using a third-party intermediary" using a "generic computer implementation"); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (invalidating claims "involv[ing] the conveyance and manipulation of information using wireless communication and computer technology"). Similar to those cases, while the claims asserted here recite tangible components—such as a server and wireless devices—those components had existed for decades before the priority date, and the claims recite them to perform only the conventional functions that such components had always performed.

Notably, the claims do not recite anything inventive—such as a new component, or a technological improvement to the functioning of the recited conventional components—that might transform them into patent eligible subject matter. Indeed, the patents admit that the claimed wireless devices were already known and already configured to communicate on the claimed short-range and wide-area wireless networks prior to the alleged invention. '359, 2:11-23. The claimed advance "for facilitating the exchange of information and transaction between two entities" was the use of a conventional and generic central server (*id.*, Abstract, 3:63-4:8)—the abstract concept of "using a third-party intermediary." *Alice*, 573 U.S. at 219. Because the claims both (1) are

directed to an abstract idea, and (2) fail to recite any transformative, inventive concept, they fail the Supreme Court's two-step test for patent eligibility. *Id.* at 217-18 (reciting two-step test).

Separately, for the asserted claims, Proxicom failed to plead facts sufficient to allege a plausible claim of infringement for Counts VI-VIII. For the claims that are asserted, Proxicom simply failed to address certain claim elements and, even where other elements were addressed, Proxicom's factual allegations failed to set forth a plausible claim. Thus, Counts VI-VIII should be dismissed as to all claims.

In addition, as to all claims not identified in the Complaint, Proxicom failed to make any showing whatsoever. Thus, all Counts should be dismissed as to all unspecified claims.

## II.    BACKGROUND

### A.    The Asserted Patents Describe a Generic System for Communicating Information Wirelessly Using a Server as a Broker Between Wireless Devices

As the patents explain, "[t]he present invention is generally concerned with facilitating the exchange of information and transactions between two entities associated with two wireless devices … utilizing both a short range and a long range wireless capability." '359, 2:53-57. The Asserted Patents facilitate this exchange using a central server to "broker" transactions between the two wireless devices. *Id.*, 3:63-4:7. This use of a central server is expressly described as a point of novelty over certain prior art peer-to-peer approaches. *Id.* ("A distinction from such peer to peer approaches is the use of a central server to 'broker' the transactions between peers….").

As the specification explains, one wireless device detects an identifier from a second wireless device using a short range wireless network. *Id.*, 2:62-67. Rather than directly exchanging subsequent information between the two wireless devices, one of the two wireless devices instead communicates with a central server via a wide area network using "a second wireless capability" and receives information from that server relating to the other device. *Id.*, 2:67-3:14. "By using a

central server to draw on stored information and content associated with the entity or entities, the server can broker the exchange of information between the entities and the devices." *Id.*

The Asserted Patents describe the use of these short range and long range wireless capabilities as well-known and conventional. For example, the specification admits that "[m]ost mobile phones on the market today support at least two wireless standards; one for the cellular wireless wide area network … and one for a wireless personal or local area network" such as Bluetooth or Wi-Fi. *Id.*, 2:11-23. Indeed, the specification states that, in the preferred embodiment, information identifying the two wireless devices is transmitted "ideally using *existing* short range radio communication standard capabilities such as Bluetooth [] or Wi-Fi []." *Id.*, 2:65-67. No new wireless protocols or devices are described in the Asserted Patents.

### B.      The Asserted Claims of the '359, '749, and '592 Patents

In its Complaint, Proxicom identifies with particularity only three claims from the '359, '749, and '592 patents as allegedly infringed by Target: '359 claim 1, '749 claim 1, and '592 claim 19. '359 claim 1 and '592 claim 19 recite a method that uses a server to facilitate the exchange of information between wireless devices:

| <u>'359 Patent, Claim 1</u> | <u>'592 Patent, Claim 19</u> | <u>Target's Discussion of the Claims</u> |
|---|---|---|
| 1. A *method for a central server to exchange information between one or more wireless devices* comprising the steps of: | 19. A *method for a server to exchange information with one or more wireless devices* comprising the steps of: | Claims relate to using a server to exchange information between wireless devices (Devices A and B). |
| the *central server receiving second device identifier information from a first wireless device*, | the *server receiving identifier information from a first wireless* device using a wide area wireless network, | Identifier information ("ID2") is transmitted from Device A to a Server. |
| the *second device identifier information having been collected by the first wireless device from a second device* and wherein said | the *identifier information provided* to the first wireless device from a second wireless device | ID2 was transmitted from Device B to Device A using a short range wireless |

| | | |
|---|---|---|
| second device provides the second device identifier information to the first wireless device **using short range communication without the use of wires** from the second device to the first wireless device; | **using short range wireless communication**; | communication. |
| said central **server using** the second device **identifier information to determine** one or more of an identity or related **information concerning an entity or object located in proximity to the second device**; and | said **server using identifier information to determine information concerning an entity or object located in proximity to the second wireless device**; and | Server uses ID2 to determine information relating to an entity or object in proximity to Device B. |
| subsequent to the step of the central server receiving the second device identifier information from the first wireless device, the central **server** taking further action to **deliver information or a service to the first wireless device based at least in part upon (a) the second device identifier** and (b) at least one of the following: (i) feedback ratings relevant to an entity associated with either the first wireless device or the second device identifier information; (ii) **information representing a reward for an entity associated with the first device's participation in a loyalty program**; or (iii) a current step in a multiple step process for an ongoing electronic commerce transaction. | the **server delivering information to the first wireless device based at least in part upon the identifier information** and **information representing a reward for an entity associated with the first wireless device's participation in a loyalty program**, wherein said information includes a name associated with said entity or object located in proximity to the second wireless device or a name associated with said loyalty program as determined by the server utilizing said identifier information …. | Server sends information (or a service) to Device A based, in part, on both ID2 and any one of the subsequently recited pieces of information. |

'359 claim 1 and '592 claim 19 simply recite steps for receiving, analyzing, and transmitting information. '592 Claim 19 specifies further only that the information representing a reward for participation in a loyalty program "includes a name associated with said entity or object located in proximity to the second wireless device or a name associated with said loyalty program as determined by the server utilizing said identifier information."

Similarly, '749 claim 1 recites only steps for exchanging identifier information over wireless networks using a server:

1. A **method for exchange of information between** one or more applications executing on at least **a first wireless device and a second wireless device**, the method comprising the steps of:

   at the first wireless device, **providing** initial **identification information to a central server**,

   said initial **identification information having been collected** by the first wireless device from the second wireless device **via a first, direct, short range local wireless link** between the second and first wireless devices,

   wherein the initial identification information is associated at the central server with an identity of a user or entity associated with the second wireless device, and wherein **the initial identification information is provided to the central server**, by the first wireless device, **over a second wireless link**;

   at the second wireless device, upon an occurrence of a predetermined event coordinated with said central server, within a specific application on the second wireless device, **providing modified identification information over the first, direct, short range local wireless link** in place of the initial identification information, such that the modified identification information is associated at the central server with said identity of a user or entity associated with the second device; and

   at the first wireless device, **collecting said modified identification information**.

## III.   LEGAL STANDARD

### A.   Section 101 Defines Patentable Inventions

Laws of nature, natural phenomena, and abstract ideas are not patentable. *See Alice*, 573 U.S. at 216-17. Abstract ideas are "the basic tools of scientific and technological work" and the "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Courts must apply a two-step framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible application of those concepts." *Alice*, 573 U.S. at 217.

At *Alice* step one, courts "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Id*. This requires "looking at the 'focus' of the claims, their 'character as a whole,'" to determine if they are directed to excluded subject matter. *Elec. Power Grp. v.*

*Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). "The inquiry often is whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).[3]

At step two, courts search for an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo* at 72-73). Courts are to identify "'[w]hat else is … in the claims'", beyond the abstract idea to which the claims are directed. *Id.* at 217. There is nothing inventive about applying an abstract idea using "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* at 225. Nor will "[a] simple instruction to apply an abstract idea on a computer," or "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("*Capital One*").

Patent eligibility under § 101 is a question of law, which courts may resolve on a motion to dismiss. *OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). While courts must accept the factual allegations in the complaint and consider them in the light most favorable to the non-moving party, "[i]n ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017); *see also Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1384-86 (Fed. Cir. 2018) (affirming grant of motion to dismiss under § 101). Dismissal

---

[3] Unless otherwise indicated, all emphasis added and all citations omitted.

pursuant to Rule 12(b)(6) is appropriate for a claim of patent infringement when, "on a dispositive issue of law [such as 35 U.S.C. § 101], no construction of the factual allegations will support the cause of action." *Valentine Commc'ns, LLC v. Six Continents Hotels, Inc.*, 389 F. Supp. 3d 1223, 1229-30 (N.D. Ga. 2019) (granting motion to dismiss on Section 101 grounds; not every determination under § 101 "contains genuine disputes over the underlying facts material to the § 101 inquiry ... [and] '[r]elying on the specification alone may be appropriate where ... the specification admits'" the computer components are "'well-understood, routine, and conventional'"). Thus, dismissal of the Complaint on patent ineligibility grounds is appropriate where there is no genuine dispute of fact that the recited claim elements are well-understood, routine, and conventional. In fact, in denying the petition for rehearing *en banc* in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, a plurality of judges affirmed that "[i]n a situation where the specification admits the additional claim elements [relied upon for the alleged inventive concept] are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." 890 F.3d 1354, 1356 (Fed. Cir. 2018) (Moore, J., concurring) ("*Aatrix II*").

### B.    *Iqbal*/*Twombly* Pleading Standards for Allegations of Patent Infringement

Every pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]hort and plain" demands more than mere recitation of legal elements—the Rules require "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 984-85 (Fed. Cir. 2014). Moreover, the allegations must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. Claims that fail to meet

this standard must be dismissed. Fed. R. Civ. P. 12(b)(6).

Rule 8's pleading standard, as set forth by the Court in *Iqbal* and *Twombly*, applies to all civil actions, including patent infringement actions. Fed. R. Civ. P. 1; *see also Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV, 2017 WL 3503399, at *3 (S.D. Fla. June 22, 2017) (noting abrogation of Form 18 of the Federal Rules of Civil Procedure as a pleading mechanism for patent infringement). To meet the standard, a claim of patent infringement "'must allege that [the accused] product practices all the elements of at least one of the claims of the subject patent'" by "'specifically tying the operation [of the accused product] to an[] asserted claim'" and "'addressing all of the claim requirements.'" *Raptor*, 2017 WL 6682015, at *2-3; *see also Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016). Courts must dismiss patent infringement allegations that "'[s]imply recit[e] some of the elements of a representative claim and then describ[e] generally how an accused product operates.'" *Raptor*, 2017 WL 6682015, at *3.

A pleading that fails to identify any representative claim cannot allege infringement of "unspecified claims which are not identified by claim number or supported by any factual allegations." *Blackberry Ltd. v. BLU Prods., Inc.*, No. 16-23535-CIV, 2017 WL 5004845, at *3-4 (S.D. Fla. Mar. 27, 2017) (recommending dismissal when the plaintiff alleged "'one or more claims'" or "'at least [certain numbered] claims'" and failed to plead representative claims, leaving the defendant "to guess as to which of the over 475 claims not specifically identified ... [had] been purportedly infringed"); *see also Werteks Closed Joint Stock Co. v. Vitacost.com. Inc.*, No. 16-CV-60695, 2016 WL 5076169, at *2 (S.D. Fla. Sept. 20, 2016) (dismissing complaint with respect to patent claims 2 and 3 when the plaintiff provided factual allegations addressing only claim 1).

## IV.    COUNTS I-III SHOULD BE DISMISSED BECAUSE THE ASSERTED CLAIMS ARE INELIGIBLE UNDER 35 U.S.C. § 101

### A.  *Alice* Step One: The Count I-III Claims Are Directed to an Abstract Idea

#### 1.  The Asserted Claims of the '359, '749, and '592 Patents Are Directed to the Abstract Idea of Using a Server to Facilitate the Exchange of Information Between Wireless Devices

The Count I-III Claims are directed to an abstract idea—namely, using an intermediary (*i.e.*, a server) on a wireless network to facilitate the exchange of information between wireless devices. As described above, *supra* §§ II.A-B, the claims do not describe any: new wireless networks, limitation on *how* information is transmitted across existing wireless networks, or steps beyond "exchanging information," "receiving … information," "collect[ing]" information, "provid[ing] … information," "using … information" to determine additional information, and "deliver[ing] information." Thus, viewing the claims in their entirety "'to ascertain [] their character as a whole,'" the Count I-III Claims are directed to communicating identifier information between wireless devices and/or a server, and using that server as an intermediary to broker the exchange of information. *See ChargePoint Inc. v. SemaConnect Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).

In addition, it is appropriate for the Court to "look[] to the specification" to determine what the patent purports to solve. *Id.* at 767. The shared patent specification concedes that the alleged point of novelty over the prior art is the use of a server to "broker" transactions between peers:

> Preferred embodiments of the present invention can also differ from known peer to peer based social networking in that the information flow between the devices running the applications are over the wide area network via a central server, rather than carried over the peer to peer network itself. … *A distinction from such peer to peer approaches is the use of a central server to 'broker' the transactions between peers*, enhancing the ability to manage security and information disclosure.

'359, 3:63-4:7. Indeed, the specification repeatedly points to the use of a server as the point of novelty. *Id.*, 3:2-10 ("By using a central server…"), 4:12-16 ("A further distinction of the preferred

embodiment is the use of a central server…"), 4:31-35 ("Reliance on a central server also allows…"). The claims and specification thus confirm that the Count I-III Claims are directed to the concept of using a server to facilitate the exchange of information between wireless devices.

But using an intermediary to facilitate the exchange of information was long in practice before the advent of wireless networks; and the claimed steps amount to nothing more than a way of organizing human activity, which falls squarely within the realm of abstractness. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[W]e have applied the 'abstract idea' exception to encompass inventions pertaining to methods of organizing human activity."). For example, when a restaurant waiter collects and processes a patron's credit card information, he may practice these very same steps: (1) the waiter retrieves a credit card directly from a customer (Device A retrieving identifier information for Device B using a short range communication); (2) the waiter sends the credit information to the credit card processing company (the "server") using long range communications; and (3) the credit card company, having looked up the credit information for that patron, sends back to the waiter a reply identifying whether that customer's purchase is approved. Likewise, an individual applying for a loan or a job may need to hand over identifier information (such as a social-security number or a driver's license), which is then transmitted by the loan officer or potential employer to a credit reporting agency (*e.g.*, the "server") for verification. The credit reporting agency will then reply with information regarding the applicant. And even more generically, Person A could meet Person B, learn B's name, and then ask someone else whether she knows any information about B. This practice of exchanging identifier information via short range communications given the proximity of the parties and sending that information to a broker via long range communications is an abstract concept that has been practiced for decades. And the limitation to a particular technological environment

-11-

(conventional short-range and long-range wireless networks) cannot make the claims patent eligible. *See TLI Commc'ns*, 823 F.3d at 612 (invalidating claims "directed to the use of conventional or generic technology in a nascent but well-known environment [mobile communications], without any claim that the invention reflects an inventive solution to any problem presented by combining the two"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016) (invalidating claims that "merely implement an old practice in a new environment" by incorporating computers into a method of detecting fraud); *Intellectual Ventures I LLC. v. Erie Indemnity Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) (invalidating claims directed to "an age-old practice" because an "abstract idea does not become nonabstract by limiting the invention to a particular…technological environment, such as the Internet").

Indeed, as the Supreme Court and multiple Federal Circuit decisions have repeatedly confirmed, using a server to facilitate the exchange of information between wireless devices is impermissibly abstract and not patent-eligible.

### 2. The Use of a Server to Facilitate the Exchange of Information Between Wireless Devices Is Abstract

The Supreme Court made clear in *Alice* that "fundamental economic practices"—such as using a third party intermediary in a transaction—are impermissibly abstract. *Alice*, 573 U.S. at 219-20. The claims there "involve[d] a method of exchanging financial obligations between two parties using a third-party intermediary," using a "generic computer implementation." *Id.* at 219, 221. The Count I-III Claims here are analogous in that they are directed to the exchange of information between different devices, and the only purported invention is the idea of using a third-party intermediary—a server. *Supra*, §§ II.A-B.

The Federal Circuit has repeatedly applied the Supreme Court's *Alice* holding to claims directed to the use of a third party "broker" in the exchange of information. For example, the

Federal Circuit recognized that the concept of using "a broker (i.e., a computer program on a loan-processing computer)" to organize the exchange of information between prospective borrowers and lenders is abstract. *LendingTree, LLC v. Zillow, Inc.*, 656 Fed. App'x 991, 966 (Fed. Cir. July 25, 2016) ("'[t]he use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy'"). Likewise—even pre-*Alice*—the Federal Circuit invalidated claims drawn to "'the basic concept' of processing information through a clearinghouse." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012). In *Dealertrack*, the invalidated claim "in its simplest form includes three steps: receiving data from one source (Step A), selectively forwarding the data (Step B…), and forwarding reply data to the first source (step C)." *Id.* Like the claims in *Dealertrack*, the claims here generally recite three similar steps: Device B sends Device A an identifier (Step A); Device A forwards the identifier to Server; and Server sends reply data to Device B.

The Federal Circuit's decision in *Intellectual Ventures I LLC v. Symantec* is also particularly apt. 838 F.3d 1307 (Fed. Cir. 2016). The claims there—like those at issue here—required "receiving … identifiers … via a network," "determining … whether each received … identifier matches a characteristic of other identifiers," and "outputting" information based on that determining step. *Id.* at 1313. And, like the claims at issue here, one of the invalidated claims in *Symantec* further required "utiliz[ing] an intermediary computer in forwarding information," which the Federal Circuit found to be "perfectly conventional" and invalid under § 101. *Id.* at 1321. The Count I-III Claims' reliance on the concept of an intermediate server to broker the exchange of information simply cannot make those claims non-abstract.

Likewise, the claimed use of various wireless networks does not take these claims out of the realm of abstraction. The Federal Circuit has already established that claims "involv[ing] the

conveyance and manipulation of information using wireless communication and computer technology" are not patent eligible. *Affinity Labs*, 838 F.3d at 1261; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (invalidating claims reciting "a method for routing information"); *ChargePoint,* 920 F.3d at 766 ("the claim involves an abstract idea—namely, the abstract idea of communicating requests to a remote server and receiving communications from that server, *i.e.*, communicating over a network"); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) ("the broad concept of communicating information wirelessly, without more, is an abstract idea"). Here, there is nothing in the claims or the specification to suggest that the Count I-III Claims are drawn to an improvement in how wireless networks operate. On the contrary, the Background of the Invention acknowledges that "most mobile phones on the market today" already are configured to use both long range and short range networks ('359, 2:11-23), and the specification indicates that the devices contemplated by the purported invention "ideally us[e] *existing* short range radio communication" technology (*id.*, 2:62-67).

The '359 and '592 claims also cannot escape abstraction by relying on the delivery of targeted information (such as loyalty rewards information) to a wireless device ('749 claim 1 does not recite this limitation). The Federal Circuit has repeatedly rejected such arguments. For example, in *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, the Federal Circuit found that "[a]ll three patents describe tracking a user's computer network activity and using information gained about the user to deliver targeted media, such as advertisements." 778 Fed. App'x 882, 884 (Fed. Cir. 2019). In particular, one claim at issue recited "a related process in which a user's request to a server is intercepted and 'tagged' with an identifier that contains information about the user, *including the user's location and demographic information.*" *Id.* at 885. The Federal Circuit found

all the challenged claims there abstract and directed to nothing more than communicating information using a personalized marking, and using identifiers to implement targeted marketing. *Id.* at 887, 893. The claims here fare no better. The '359 and '592 Asserted Claims recite merely the transmission of identification information across a network—which the Federal Circuit found abstract—and the use of the information to provide, *e.g.*, targeted marketing for a rewards program.

Similarly, in *Capital One*, the Federal Circuit found that "tailoring content based on the viewer's location or address" is "'a fundamental … practice long prevalent in our system….'" 792 F.3d at 1369. And in *Affinity Labs.*, the Federal Circuit found that customizing the delivery of information for "targeted advertising based on demographic information provided by the user" is abstract and patent-ineligible. *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Sept. 23, 2016). The mere recitation here of delivering "proximity data" and "device identification information" cannot make these claims non-abstract.

Conversely, the claims here are distinguishable from Federal Circuit cases holding different patents eligible under § 101. For example, in *DDR Holdings, LLC v. Hotels.com, L.P.*, the claims were patent-eligible because the claimed solution there "overrides the routine and conventional sequence of events" so as to prevent the computer network from "operating in its normal, expected manner" when a computer user clicks on a hyperlink. 773 F.3d 1245, 1258-59 (Fed. Cir. 2014). Here, in contrast, the Asserted Patents do not purport to "override" the normal operation of any claimed component and, in fact, acknowledge that existing mobile devices are already configured to use existing wireless networks recited in the claims. '359, 2:11-23, 2:65-67.

The claims here are distinguishable also from those found patent-eligible in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). There, the claims were not directed to an abstract idea, but to a newly-invented "specific type of data structure designed to improve the way a

computer stores and retrieves data in memory"—namely, a self-referential table. *Id.* at 1339. The Federal Circuit found that the "self-referential table functions differently than conventional database structures" and is an improvement over pre-existing technology. *Id.* at 1337. Here, in contrast, the Asserted Patents do not purport to have created a new computer structure with improved functionality, and instead merely use conventional hardware components to perform their conventional functions.

In contrast to *DDR* and *Enfish*, "the Federal Circuit has consistently held that gathering, analyzing, transmitting, receiving, filtering, organizing, or displaying data, and combinations thereof, is an abstract idea without something more." *ChargePoint, Inc.*, 2018 WL 1471685, at *6 (collecting cases), *aff'd*, 920 F.3d 759 (Fed. Cir. 2019). Here, the Count I-III Claims recite nothing more than collecting, transmitting, and (in some instances) analyzing data, and thus are impermissibly abstract and not eligible for patent protection.

### B.   *Alice* Step Two: Using Generic Wireless Devices on Generic Wireless Networks Does Not Add an Inventive Concept

The only hardware recited in any of the Count I-III Claims—across all three patents—is conventional: a [central] server and two wireless devices. The patents do not purport to have invented or improved any of these devices, and instead acknowledge that they are generic and that their implementation details are immaterial to the invention: "The internal structure of [wireless] devices 106, 108 or server 100 includes one or more data processors (*not shown in detail*) *that are well known in the art* to include a system bus for data transfer among the other internal components of a computer system (e.g., processor, disk storage, memory, input/output ports, network ports, etc.)." '359, 6:1-6. Using these existing components in their conventional manner cannot supply an inventive concept. *Alice*, 573 U.S. at 222 (no inventive concept where the "process could be 'carried out in existing computers long in use'").

There can be no dispute that, like the claims in *Alice*, the claimed invention here uses existing devices in their conventional mode of operation. The specification admits that even prior to the alleged invention, "most mobile phones on the market" already supported the use of two wireless networks: a wide-area network (such as a cellular network) and a local area network (such as Bluetooth). '359, 2:11-23. Likewise, the specification admits that in the preferred embodiment, information identifying the two wireless devices is transmitted "ideally using ***existing*** short range radio communication standard capabilities such as Bluetooth [] or Wi-Fi []." *Id.*, 2:65-67. The patents here simply do not purport to have invented any new hardware or software for implementing the abstract idea.

The patents also do not purport to override the normal operation of these wireless devices or wireless networks; the devices are used simply to send and receive wireless communications. As such, the claims are directed to nothing more than the use of conventional hardware in its conventional manner to perform the abstract idea. This is insufficient to provide an inventive concept. *See Alice*, 573 U.S. at 223 ("[I]f a patent's recitation of a computer amounts to a mere instruction to 'implement' an abstract idea 'on a … computer,' that addition cannot impart patent eligibility."); *BuySAFE v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network — with no further specification — is not even arguably inventive.").

Likewise, it is irrelevant to the inventive concept analysis that the Count I-III Claims purport to limit the type of information transmitted. The Federal Circuit has made clear "that limitation of the claims to a particular field of information ... does not move the claims out of the realm of abstract ideas." *See SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018). Indeed, incorporating particular types of information into an abstract idea does not make

the idea any less abstract because "[i]nformation as such is an intangible" and limiting the idea to particular information "does not change its character as information." *Elec. Power Grp.*, 830 F.3d at 1353. Thus, because the idea of transmitting information to and from a third-party intermediary is abstract, it is irrelevant whether the information is an identifier or some information about a related entity. The underlying concept is still abstract.

### C.    No Further Claim Construction Is Necessary to Decide Patent Eligibility

Claim construction is not a prerequisite to a finding of invalidity under § 101. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."). As this Court recognizes, "[c]ourts that have resolved § 101 issues prior to claim construction often do so by adopting the patentee's proposed construction for purposes of analysis." *zIT Consulting GMBH v. BMC Software, Inc.*, No. 6-15-CV-1012-ORL-37KRS, 2016 WL 231215, at *5 (M.D. Fla. Jan. 15, 2016). Moreover, here, Proxicom already asserted the Count I-III Claims in this Court in a prior litigation and this Court already construed the terms of the Count I-III Claims. *Macy's*, 2019 WL 2209275. While Target reserves its right to subsequently address the appropriate construction of all of the Asserted Claims, Target adopts the Court's prior constructions for purposes of this motion. It is therefore appropriate at this stage of the litigation for the Court to determine the validity of the Count I-III Claims identified in the Complaint.[4] Moreover, no construed term from the prior litigation limits the claims in a meaningful fashion to provide an inventive concept. Indeed, for each of the construed terms in dispute, the Court found in favor of Proxicom. *Id*. at *6, 8, 10, 12. Further demonstrating that the claims are simply directed

---

[4] While Target believes all the claims of the Asserted Patents are ineligible under § 101, it is specifically targeting the Count I-III Claims because they have already undergone claim construction.

to an abstract concept and fail to recite any inventive concept, Proxicom opposed Macy's attempts to construe the claims more narrowly. *Id.*

### D.     There Are No Issues of Fact That Preclude Summary Judgment

Patent eligibility can be determined at the Rule 12(b)(6) stage when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software v. Green Shades Software* ("*Aatrix I*"), 882 F.3d 1121, 1125 (Fed. Cir. 2018). Here, Proxicom has alleged no facts in its Complaint suggesting that the claimed methods contain inventive components or improves the workings of a network. As such, the Court may find—as a matter of law—that these claims do not include an inventive concept. Indeed, as the plurality recognized in its *en banc* denial of rehearing in *Aatrix*, "[n]othing in this decision should be viewed as casting doubt on the propriety of our previous cases resolving patent eligibility on motions to dismiss." *Aatrix II*, 890 F.3d at 1358. And even post-*Aatrix*, the Federal Circuit continues to uphold decisions finding patents ineligible based on the pleadings. *Id.* at 1358-59 (collecting cases). This is because the Federal Circuit has "repeatedly recognized the absence of a genuine dispute as to eligibility for the many claims that have been defended as involving an inventive concept based merely on the idea of using existing computers or the Internet to carry out conventional processes, with no alteration of computer functionality." *Id.* at 1359.

That is the case here. As demonstrated above, the claims do not include any new or inventive hardware, software, or communication systems. *Supra*, §§ IV.B. The Complaint does not allege any inventive concept, and the specification does not include any facts that—even when taken as true—support a finding that the claimed limitations are not well-understood, routine, and conventional. The specification alleges that a benefit of the current invention is the ability to communicate with a peer that is not in close proximity ('359, 2:34-51, 7:41-45), but that is the crux of all modern communication and is undeniably abstract. *E.g., Affinity Labs*, 838 F.3d at 1258

("The practice of conveying regional content to out-of-region recipients has been employed by nearly every form of media . . . ."). Further, while the specification purports to distinguish prior art systems that carry information over a peer-to-peer network rather than the claimed wide-area network ('359, 4:5-13), this too is abstract. *E.g., Innovation Scis. LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863 (Fed. Cir. 2019) ("The fact that communication is 'switched' from a website hosted on one server to a website hosted on another server with better security does not mean the invention is directed to 'a specific improvement in the capabilities of computer devices.'"). Indeed, the specification does not purport to improve the capabilities of any device or network, and instead is directed to using existing devices on existing networks in a conventional manner.

### E.     The Remaining Unasserted Claims from the Count I-III Patents Are Also Abstract and Patent-Ineligible

As the Federal Circuit recently held in *Ameranth, Inc. v. Domino's Pizza, LLC*, a district court does not have jurisdiction to determine eligibility of claims not listed in the complaint or in infringement contentions, despite the complaint's allegation that "at least" certain claims are infringed. No. 2019-1141, 2019 WL 5681315, at *2-3 (Fed. Cir. Nov. 1, 2019). While not the subject of the instant motion, even if the remaining unasserted claims from the '359, '592 and '749 patents had been asserted, they would not introduce any new non-abstract idea or any inventive concept sufficient to render those claims patent eligible.

For example, each of the other independent claims (*e.g.*, '359 claim 14, '749 claim 7, and '592 claims 1, 19, 25, 30, 33) generally recites the same or similar limitations as the asserted claims. Claims reciting additional limitations specifying the type of information delivered between the devices (*e.g.*, '359 claims 2-4, 6, 7, 15-17, 19, 20, 27-32, 34, 35, 43, 46, 51; '592 claims 8-18, 20-24, 26, 32) are equally ineligible. *See SAP Am.*, 898 F.3d at 1169 ("limitation of the claims to a particular field of information ... does not move the claims out of the realm of abstract ideas");

*Elec. Power Grp.*, 830 F.3d at 1353. Similarly, there can be no dispute that limiting the alleged invention to particular economic transactions (*e.g.*, '359 claims 8, 9, 11, 21, 22, 24, 36-42, 44, 56; '592 claims 2-7, 31) cannot render the claims patent eligible. Limitations purporting to limit the claims to a particular technological environment (*e.g.*, '359 claims 45, 49-50, 52, 54; '592 claims 27-29) fare no better; the Federal Circuit has made clear that implementing an abstract idea in a new technological environment still does not solve the problem, as discussed in §IV.A.1. And as described above, *supra* § IV.A.2, claims reciting additional limitations for delivering content to a user based on their location, demographics, or their prior actions (*e.g.*, '359 claims 5, 10, 12, 18, 23, 25, 33, 47, 48, 53, 55; '592 claims 20, 21, 22, 23, 24) are equally abstract. *Capital One*, 792 F.3d at 1369 ("tailoring content based on the viewer's location or address" is "'a fundamental … practice long prevalent in our system….'"); *Affinity Labs.*, 838 F.3d at 1271. The mere recitation here of delivering "proximity data" and "device identification information" cannot make these claims non-abstract. Finally, using synchronization information to coordinate the timing of actions between devices (*e.g.*, '359 claims 13 and 26) was recently identified by the Federal Circuit as an abstract idea and therefore patent-ineligible. *Ameranth,* 2019 WL 5681315, at *5 ("the concept of synchronous communications and automatic formatting for different handheld devices without more is an abstract idea.").

Likewise, the dependent claims of the '749 patent merely specify where the abstract idea is carried out, without meaningfully adding an inventive concept. For example, dependent claims specifying that the central server communicates rules or instructions for updating an identifier or further receives communication of an updated identifier (*e.g.*, claims 3-6, 9-12, 17-26) does not make the communication of that information any less abstract. *See SAP Am.*, 898 F.3d at 1169; *Elec. Power Grp.*, 830 F.3d at 1353. And as discussed above, it is entirely generic and conventional

to change identifying information on a timely basis as recited in claims 2 and 8, or to protect the privacy and/or validity of the device as recited in claims 13-16.

## V.   COUNTS VI-VIII SHOULD BE DISMISSED FOR FAILURE TO SATISFY *IQBAL/TWOMBLY*

Pursuant to Rules 8 and 12, Proxicom's Counts VI-VIII fail to plead a claim and, separately, all its Counts fail to plead a claim as to the claims not specified in the Complaint. Specifically, Proxicom's factual descriptions of the accused system, and its operation, fail to create a plausible inference that every element of the asserted claims is met. Proxicom's deficient pleading is unsurprising: if this case advanced past the pleading stage, discovery would show that Target's devices and software—including Target's mobile phone application, in-store Bluetooth Beacons, and servers—do not infringe.

In each of the Asserted Patents, the Asserted Claims generally recite that a first wireless device receives identification information from a second wireless device over a wireless network and provides this identification information to a server over another wireless network. Based on a particular claimed function being executed, the server provides additional information to the first wireless device (and in some instances, to the second wireless device). Proxicom's complaint alleges that the recited methods, devices, and systems are infringed by the use of a Target App on a customer's mobile device (the alleged "first wireless device") to receive an identifier from a Bluetooth beacon in a light fixture of Target retail stores (the alleged "second wireless device") and to send the identifier to a server (the alleged "server") that interacts in a claimed manner with the customer device and/or the Bluetooth beacon. Not only are Proxicom's allegations unfounded, but Proxicom's Complaint fails to even meet the pleading standards as to several of its allegations—further demonstrating that Target does not infringe any of the Asserted Claims.

### A.   Count VI Fails to Allege Infringement of Claim 1 of the '842 Patent

Proxicom fails to plausibly allege "a transaction between a first wireless device and a second wireless device utilizing a server" as required by the sole asserted claim of the '842 patent. The claim covers a method for facilitating such a transaction. *See also* '842 Claim 1 (reciting "said transaction"). Yet, Proxicom fails to allege that a transaction takes place between a customer's mobile device running the Target App (the alleged first wireless device) and a Bluetooth beacon (the alleged second wireless device). At most, Proxicom alleges that information is exchanged between a first wireless device and a server—not a second wireless device as required by the claim. *See* Compl. ¶¶ 119-120; *see also* '842 patent, claim 1(reciting "[a] method for facilitating a transaction between a first wireless device and a second wireless device utilizing a server…"—not a transaction between a first wireless device and a server). Proxicom cannot plausibly allege a transaction between the alleged first wireless device (a customer's mobile device) and the alleged second wireless device (a Bluetooth beacon) because the accused system does not perform any such transaction. Count VI should be dismissed.

### B.    Counts VII and VIII Fail to Allege Infringement of Claims 1 and 16 of the '129 Patent or Claims 1 and 15 of the '736 Patent

Proxicom fails to plausibly allege a "disclosure policy" associated with the second wireless device's identity, as required by claims 1 and 16 of the '129 patent and claims 1 and 15 of the '736 patent. Like the other Asserted Claims, these claims concern the exchange of information between a first and second wireless device. Claim 1 of the '129 patent further requires "a disclosure policy *associated with the second unique identifier* [associated with the second wireless device] ... wherein the disclosure policy specifies data representing one or more rules for privacy of information concerning the second wireless device or privacy of information concerning an entity associated with the second wireless device." Claim 16, the only other asserted claim of the '129 patent, requires "a disclosure policy *associated with the second unique identifier*," where "the

disclosure policy specifies data representing one or more rules for privacy of information concerning the first and second wireless devices." Similarly, claims 1 and 15 of the '736 patent both require "disclosure policy data ***associated with the second identification information***, the disclosure policy data representing rules for privacy of information concerning the second wireless device or privacy of information concerning an entity associated with the second wireless device."

For each claim, Proxicom fails to create a plausible inference of a disclosure policy associated with second wireless device's identifier or identification information and addressing rules for privacy. For claims 1 and 16 of the '129 patent and claims 1 and 15 of the '736 patent, Proxicom fails to allege any "disclosure policy associated with the second unique identifier," pointing only generally to "personalized offers" or—at best—to rewards offered "in store." Compl. ¶¶ 133, 138(b), 147, 150(d)(i). Proxicom points to no facts concerning privacy. Compl. ¶¶ 133, 138(b), 147, 150(d)(i). This is insufficient to allege a disclosure policy associated with ***an individual Bluetooth beacon's*** (the alleged second wireless device's) identification information, let alone one which specifies "rules for privacy of information." Compl. ¶¶ 133, 138(b), 147, 150(d)(i). Here again, Proxicom cannot plausibly allege the existence of these limitations because the accused system does not meet them. Counts VII and VIII should be dismissed.

### C.     All Claims Not Specifically Asserted Should Be Dismissed

Under the *Iqbal/Twombly* standard, Proxicom failed to plead infringement of all patent claims not specifically identified in the Complaint. Courts in neighboring districts dismiss infringement allegations to the extent the allegations encompass unspecified patent claims, such as allegations concerning "at least [certain numbered] claims" or that provide factual allegations for one claim, but not others. *Blackberry*, 2017 WL 5004845, at *4 (recommending dismissal when plaintiff alleged "at least [certain numbered] claims" and failed to plead representative claims)(citing *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15CV478, 2016 WL 1253533,

at *4 (E.D. Va. Mar. 22, 2016)); *Werteks*, 2016 WL 5076169, at *2 (dismissing complaint as to patent claims 2 and 3 when plaintiff provided factual allegations addressing only claim 1). But that is exactly what Proxicom alleged here. Proxicom does not allege any claim is representative. Instead, Proxicom alleged infringement of "at least claim 1" of the 56 claims in the '359 patent, "at least claim 1" of the 26 claims in the '749 patent, "at least claim 19" of the 33 claims in the '592 patent, "at least claims 1 and 40" of the 59 claims in the '896 patent, "at least claims 1 and 7" of the 43 claims in the '913 patent, "at least claim 1" of the 29 claims in the '842 patent, "at least claims 1 and 16" of the 30 claims in the '129 patent, and "at least claims 1 and 15" of the 23 claims in the '736 patent. Compl ¶¶ 58, 69, 82, 98, 115, 126, 139, 151. In each instance, Proxicom purported to offer factual allegations for only the specified claim. *E.g.*, Compl ¶¶ 48, 61, 72, 85, 94, 101, 108, 118, 129, 136, 142, 149. Just like the pleadings in *Blackberry*, this leaves Target "to guess as to which of the over [275] claims not specifically identified ... [had] been purportedly infringed." *Blackberry*, 2017 WL 5004845, at *4 (finding failure to sufficiently plead patent claims left the defendant "to guess as to which of the over 475 claims not specifically identified ... [had] been purportedly infringed"); *see also Werteks*, 2016 WL 5076169, at *2. Therefore, each Count should be dismissed as to patent claims not specifically identified as asserted in the Complaint.

## VI.    CONCLUSION

For the foregoing reasons, Target respectfully requests that Counts I-III and VI-VIII of Proxicom's Complaint be dismissed in their entirety, and that all Counts should be dismissed as to the unasserted claims.

### <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), Defendant's counsel certifies that Defendant conferred with Plaintiff's counsel and that Plaintiff's counsel opposes the relief requested in this motion.

Dated: December 4, 2019

Respectfully submitted,

/s/ Dennis P. Waggoner
Dennis P. Waggoner
Florida Bar No. 509426
dennis.waggoner@hwhlaw.com
julie.mcdaniel@hwhlaw.com
**Hill, Ward & Henderson, P.A.**
101 East Kennedy Blvd., Suite 3700
Tampa, Florida 33602
Phone: (813) 221-3900
Fax: (813) 221-2900

James Batchelder (*pro hac vice* to be filed)
James.Batchelder@ropesgray.com
James L. Davis, Jr. (*pro hac vice* to be filed)
James.L.Davis@ropesgray.com
Monica Ortel (*pro hac vice* to be filed)
Monica.Ortel@ropesgray.com
**Ropes & Gray LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
Phone: (650) 617-4000

Josef B. Schenker (*pro hac vice* to be filed)
Josef.Schenker@ropesgray.com
Cassandra Roth (*pro hac vice* to be filed)
Cassandra.Roth@ropesgray.com
**Ropes & Gray LLP**
1211 Avenue of the Americas
New York, NY  10036-8704
Phone: (212) 596-9000

*Attorneys for Defendant Target Corporation*

13410761v1